RINTIN CORP., S.A., a Panamanian
corporation, Plaintiff,

v.

DOMAR, LTD., a Bermuda
corporation, Defendants.

No. 04–22661–CIV–KING.

United States District Court,
S.D. Florida.

June 13, 2005.

D. Fernando Bobadilla, Esq., Michael D. Ehrenstein, Esq., Kluger, Peretz, Kaplan & Berlin, P.L., Miami, FL, Counsel for Plaintiff.

Edward M. Mullins, Esq., Jose I Astigarraga, Esq., Alberto Ordonez, Esq., Annette C. Escobar, Esq., Astigarraga Davis, Miami, FL, Counsel for Defendant.

## FINAL JUDGMENT CONFIRMING ARBITRATION AWARD

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Motion to Vacate Arbitral Award.(DE # 9) filed November 19, 2004, and Defendant's Cross–Motion to Confirm Arbitral Award. (DE # 23) filed December 17, 2004.[1]

### I. BACKGROUND

Plaintiff, Rintin Corp., is a corporation organized and existing under the laws of Panama. Defendant, Domar, is a corporation organized and existing under the laws of Bermuda. Defendant is the majority (85%) and Plaintiff is the minority (13%) shareholder in a Panamanian company, Dominica Cement Holdings, S.A. ("DCH"). DCH is a holding company that owns 70%

---

1. On December 21, 2004, the Court held a Rule 16 Scheduling Conference in the above-styled case wherein the procedural posture of the cross-motions were discussed. On December 22, 2004, the Court set a consolidated briefing schedule for the motions. On May 3, 2005, after full briefing of the issues in the case, the Court held oral argument on the motions.

of the shares of Cementos Colon, S.A. ("Colon"), a Dominican Republic company, which owns and operates a cement plant in the Dominican Republic that was privatized in 1996. The remaining 30% of Colon was initially owned by Corporacion Dominicana de Empresa Estatales ("CORDE"), a company owned by the Government of the Dominican Republic. CORDE has since sold its 30% interest to Ludhafen, Inc.

On October 23, 1996, Plaintiff and Defendant entered into a shareholders' agreement titled "Dominicana Cement Holding, S.A. Shareholders' Agreement" to memorialize their agreements as shareholders of DCH. The Shareholders' Agreement addresses the shareholders' ownership interests in DCH, the capitalization of DCH, the management and business affairs of DCH, the formation of Colon, and the organization of DCH with respect to Colon. DCH's sole object according to the agreement "is to own the rights of the participation by means of shares of [DCH] in CEMENTOS COLON, S.A.," which, in turn, operated the cement plant noted above in the Dominican Republic. The Shareholders' Agreement contains an arbitration clause which provides:

> ...Any dispute which may arise from the interpretation, execution or termination of this agreement or from the breach thereof, which cannot be resolved by the parties pursuant to the procedure and terms set forth in the preceding paragraph, shall be submitted to arbitration...according to the provisions of the Florida International Arbitration Act and in compliance with the rules of the American Arbitration Association.

*See* Shareholders' Agreement attached to Plaintiff's Motion to Vacate as Exhibit "A."

After execution of the Shareholder' Agreement, a dispute arose between Plaintiff's principal, Mr. Prats, and Defendant. Plaintiff, therefore, attempted to sell its interests in DCH and eventually filed a series of lawsuits in Panama and the Dominican Republic against Defendant's affiliates as well as criminal actions against Defendant's affiliates in Switzerland and Spain. The ultimate effect and object of Plaintiff's lawsuits was to completely dissolve and nullify the privatization of the cement plant, the ownership of which was the ultimate basis of DCH, the investment vehicle in which Plaintiff was a minority shareholder and Plaintiff's only connection or interest to the cement plant.[2] On October 19, 1999, Defendant filed a demand for arbitration against Plaintiff before the American Arbitration Association ("AAA") pursuant to the parties' Shareholders' Agreement. The demand for arbitration sought a declaration that Plaintiff owned 13% of DCH and that Plaintiff had breached the Shareholders' Agreement by, amongst other things, filing the foreign lawsuits; a buyout of Plaintiff's shares in DCH and a valuation thereof in accordance with the Shareholders' Agreement; damages for breach of good faith and fair dealing; and an injunction to enjoin Plaintiff's prosecution of its lawsuits against Defendant.

Plaintiff consistently challenged the arbitrability of the dispute by filing an action

---

2. Specifically, Plaintiff filed two lawsuits in the Dominican Republic against Holderbank and Umar Ltd (an affiliate of Defendant), Colon and CORDE (the government agency which sold the cement manufacturing plant) seeking to set aside the sale of the cement manufacturing plant. In addition, Riutin filed two lawsuits in Panama against DCH seeking to nullify certain of that company's corporate actions. Finally, Plaintiff pursued a criminal action for fraud in Switzerland against Markus Ackennan, Holderbank's president, and a criminal complaint in Spain against Colon officers for fraud in the capitalization of Colon.

immediately in Florida state court contesting the authority of the AAA to hear the dispute. *See Rintin Corp., S.A. v. Domar, Ltd.,* 766 So.2d 407, 409 (Fla.App. 3rd DCA 2000). The trial court in that case held that the issue of arbitrability should first be decided by the AAA and only could only be challenged collaterally after arbitration. *Id.* Thereafter, the parties proceeded to arbitration and in February 2001, after two days of hearings and the presentation of evidence and testimony and the submission of briefings by the parties on whether the issues raised in Defendant's claims were arbitrable, the AAA issued an order determining that the claims were arbitral and that the conditions precedent for the initiation of arbitration had been met, became unnecessary, or became impossible to meet. Ultimately, on December 11, 2003, after a lengthy arbitration that lasted approximately five (5) years and involved approximately twenty-two (22) days of arbitral hearings, the AAA entered its Final Award (the "Award"), which ordered Defendant to purchase Plaintiff's interest in DCH for $5,184,000.00 and ordered Plaintiff to terminate its foreign civil and criminal lawsuits against Defendant's affiliates. The AAA panel awarded Plaintiff $5,184,000.00 by valuing the worth of the DCH stock, rather than simply ordering Defendant to repay Plaintiff's approximately $1.3 million investment in DCH.

On May 27, 2004, Plaintiff filed a Complaint to Vacate Arbitral Award before the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida, in which it asserted that the arbitral award must be vacated pursuant to Sections 684.24 and 684.25 of the FIAA. On that same day, Plaintiff also filed a the instant motion to vacate the arbitral award. On October 22, 2004, Defendant removed the above-styled action to this Court and on November 19, 2004, Plaintiff filed a notice informing this Court that it intended to rely on its pending motion to vacate the arbitral award in compliance with Local Rule 7.2. Plaintiff argues five different bases pursuant to the FIAA: (1) there was no written undertaking to arbitrate; (2) the arbitration proceedings were conducted unfairly and substantially prejudiced Plaintiff; (3) the arbitral award is contrary to public policy; (4) matters arbitrated were not within the scope of the agreement to arbitrate; and (5) the arbitral tribunal was not constituted in accordance with the agreement of the parties. On December 17, 2004, Defendant filed the instant cross-motion to confirm the arbitral award. Defendant argues that the arbitral panel was constituted via the express terms of the Shareholder's Agreement and that public policy requires this Court to give broad interpretation to arbitration clauses and broad latitude to arbitral panels.

## II. *LEGAL STANDARD*

The parties agree that the resolution of this dispute is governed by the Florida International. Arbitration Act, chapter684, Florida Statutes ("FIAA"). Pursuant to the FIAA, § 684.24(a), the "court shall confirm the award without regard to the place of arbitration unless one or more of the grounds set forth in section 684.25 is established by way of an affirmative defense." Confirmation is appropriate "without regard to the law of the place of arbitration, the law governing the award, or whether the a court of law or equity would apply the law or decisional principles applied by the arbitral tribunal or would grant the relief provided for in the award." FIAA Legis. Hist. at 32.

Section 684.25 of the FIAA provides the bases for vacating an arbitral award. It states in relevant part:

A final award shall be vacated or declared not entitled to confirmation by

the court of this state only if one or more of the following grounds is established:

(a) There was no written undertaking to arbitrate...;

(b) The arbitral tribunal conducted its proceedings so unfairly as to substantially prejudice the rights of the party challenging the award;

(d) The award...is contrary to the public policy of the United States or of this state;

(f) The award resolves disputes which the parties did not agree to refer to the arbitral tribunal...and the tribunal's decision that such dispute was referred to it for arbitration was clearly erroneous...; or

(g) The arbitral tribunal was not constituted in accordance with the agreement of the parties....

■ Of course, objections to confirmation of an arbitral award are construed narrowly to encourage the recognition and enforcement of commercial arbitration agreements in international contracts, *Karaha Bodas Co., LLC v. Perusahaan Pertambangan,* 364 F.3d 274, 290 (5th Cir. 2004),[3] and this Court's review of the arbitration award thus is extremely limited. *Hesfibel Fiber Optik & Elektronik San Ve Tic A.S. v. Four S. Group, Inc.,* 315 F.Supp.2d 1365 (S.D.Fla.2004). This is particularly true in the contest of international arbitrations, in which context there is a "general pro-enforcement bias." *See* FIAA Legis. Hist. at 8. Indeed the FIAA "places the court of this state under a positive injunction to do all in their power

to encourage [international] arbitration and to interpret the Act with that broad object foremost in mind." *Id.*

## III. DISCUSSION

The Court finds that the Defendant has met its burden for confirmation: it tendered the Award and the agreement to arbitrate with Plaintiff. *See Karaha Bodas Co.,* 364 F.3d 274. The burden thus shifted to Plaintiff to show that one of the limited bases to vacate the Award applied and Plaintiff was unable to do so.

■ . First, contrary to Plaintiff's argument, the parties had a written undertaking to arbitrate the agreement. Plaintiff argues that the agreement to arbitrate was void because, pursuant to Panamanian law, the law of the state of incorporation of DCH, "the Shareholder's Agreement, including its arbitration cause, is null, void and unenforceable." (Pl.'s Mot. at 12) However, Plaintiff's argument is really nothing more than an attack on the contract as a whole as opposed to the "written undertaking to arbitrate" and thus does not constitute a valid basis to vacate an arbitral award under the FIAA. Further, Plaintiff's argument that there was no written undertaking to arbitrate with third parties with whom it claims the AAA's order effectively forced it to arbitrate does not preclude Defendant from bringing under the arbitration clause. The Court finds that Plaintiff was not compelled to arbitrate with any third parties and there is no award for or against any third parties. The AAA award was granted on De-

---

3. The bases set forth in Section 684.25 of the FIAA for vacating awards "are similar to those found in the New York Convention," except that "the [FIAA] is more hospitably disposed towards foreign arbitral awards than the New York Convention," and the grounds for vacating an award under the FIAA are "much narrower than those set forth in the New York Convention," except that, if cir-

cumstances present themselves under which an award would be confirmed under the New York Convention, but not the FIAA, "the Convention must obviously prevail." FIAA Legs. Hist. at 27, 38. Accordingly, to the extent not inconsistent with the FIAA, case law under the New York Convention and the Federal Arbitration Act ("AAA") are persuasive authority for this Court.

fendant's behalf only and does not preclude any third parties from having their day in court.

■ Second, Plaintiff has not satisfied the stringent burden of proof necessary to establish that the arbitral proceedings were conducted so unfairly as to result in substantial prejudice. Section 684.25(1)(c) does not permit "any judicial inquiry into the substantive fairness of the award itself," and "does not confer upon the courts a license to supervise or 'second guess' the tribunal." FIAA Legis. Hist. at 39. Rather, the Court's role is limited to considering procedural irregularities in the arbitration proceedings. *Id.* Plaintiff argues that the arbitral proceedings were unfair because it was deprived of the opportunity to present evidence of the value of the foreign lawsuits and it was unable to obtain discovery on certain issues. Plaintiff, however, has not pointed to anything in the arbitral record or identified any attempt on its part or a corresponding refusal on the part of the AAA to receive and consider such evidence. A party's failure to submit evidence on any particular issue "amounts to a waiver of any objection to [the arbitral] award on such grounds," and does not constitute substantial prejudice. *Schafer Bakeries Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 650 F.Supp. 753, 757 (E.D.Mich. 1986); *Zingg v. Dept. of the Treasury, IRS,* 388 F.3d 839, 842 (Fed.Cir.2004). Further, Plaintiff has not shown how the discovery it claims it was unable to obtain is relevant, or would have affected the Award in any material respect. Moreover, discovery is not guaranteed in arbitration and arbitrators have broad discretion as to grant or deny the ability to obtain discovery. *Fernandez v. Clear Channel Broadcasting, Inc.,* 268 F.Supp.2d 1365, 1368 (S.D.Fla.2003) (party gives up right to discovery as provided by rules of civil procedure by agreeing to arbitrate).

■ Third, public policy does not support vacating the arbitral award as argued by Plaintiff; rather it supports confirming the award. A court may vacate and award if the "award...is contrary to the public policy of the United States of this state." FIAA § 684.25(d). Plaintiff argues that the portion of the Award that orders Rintin to dismiss its foreign lawsuits violates public policy because the AAA interferes with the jurisdiction of the courts in which those actions are pending and thus violated the public policy of "international comity." Plaintiff's argument is insufficient on its face to vacate the Award because the FIAA only permits the Court to overturn an arbitral award that violates the public policy of the United States or Florida. Plaintiff's international comity argument requires this Court to look at the public policy of some other jurisdiction other than the United States or Florida to determine those jurisdiction respective policies on arbitration. Further, the Award does not require foreign courts to act in violation or contravention of their own laws. Rather, the Award requires that Plaintiff terminate all litigation "in accordance with applicable law." Finally, there are a number of cases where courts recognized the propriety of granting anti-suit injunctions, which demonstrates that there is no "well-defined public policy" prohibiting the AAA's order. *See, e.g., Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.,* 369 F.3d 645 (2nd Cir.2004); *Williams v. General Electric Capital Anto Lease, Inc.,* 159 F.3d 266 (7th Cir.1998).

■ Fourth, the Court finds that there is no merit to Plaintiff's argument that the Award was clearly erroneous. Plaintiff argues that the AAA's decision was clearly erroneous because the claims that were resolved in arbitration were not within the scope of the arbitral clause. The arbitral

clause stated that "[a]ny dispute which may arise from the interpretation, execution or termination of this agreement or from the breach thereof, which cannot be resolved by the parties" would be submitted to arbitration and the AAA found that this included controversies "which, in any other manner, may seriously affect the normal operations of DCH." The AAA's finding of arbitrability is entitled to great weight upon review and the Court finds that its holding was reasonable considering the broad language of the arbitration clause at issue. Further, the Court finds that each of the claims resolved in arbitration was directly and inextricably related to the "interpretation, performance or termination of the [Shareholders'] agreement" because they directly affected the foundational documents of DCH and defined. Plaintiff's and Defendant's rights vis-à-vis each other and DCH.

■ Finally, the Court rejects Plaintiff's argument that the Award should be vacated pursuant to section 684.25(f) because "[t]he arbitral tribunal was not constituted in accordance with the agreement of the parties." The legislative history to the FIAA provides that this provision is "self-explanatory," and that "a mere technical defect in the constitution of the tribunal should not be used as a basis for denying confirmation." FIAA Legs. Hist. at 41. Plaintiff has not raised any defect, technical or otherwise, in the constitution of the AAA panel. Rather, Plaintiff claims only that the AAA panel was not constituted in accordance with the agreement of·the parties because Defendant allegedly failed to comply with a condition precedent to arbitration by not engaging in the pre-arbitral meeting required by the parties' agreement. Assuming that there was a failure to comply with a condition precedent here, which this Court rejects, and that Plaintiff has not waived its ability to rely· on ·such failure, Plaintiff still cannot demonstrate that the AAA panel was improperly consti-

tuted. Section 684.25(g), on its face, applies only when there is a major defect in how the AAA panel was selected.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is ORDERED and ADJUDGED that Plaintiff's Motion to Vacate Arbitral Award (DE.# 9) be, and the same is hereby, DENIED. It is further ORDERED and ADJUDGED that Defendant's Cross–Motion to Confirm Arbitral Award (DE.# 23) be, and the same is hereby, GRANTED.

Plaintiff is ORDERED to submit appropriate evidence, to the reasonable satisfaction of Defendant, not after 90 days from the date hereof, that it has terminated definitely, irrevocably and unconditionally, in accordance with the applicable laws, each and every lawsuit, claim or demand, filed or in process, against Defendant, DCH, Umar, Colon, Holderbank, Corde, Ackerman, Villanueva, and/or any of the executives, officials, representatives, attorneys, agents, partners, shareholders, accountants, directors, or associates of these named companies and/or individuals, and/or against any other entities or individuals closely related to those companies and/or individuals, either in the Dominican Republic, Panama, the United States, Spain, Switzerland or any other country.

Upon the acceptance by Defendant that Plaintiff has·complied, in its entirety, with the Order outlined in the preceding paragraph, Defendant is ORDERED to tender to Plaintiff the amount of $5,184,000 within thirty days and both parties are ORDERED to extend and subscribe within thirty days, the appropriate deeds or instruments for the purchase by Defendant of 13% of the equity or shareholder interest of Plaintiff in DCH at the price of $5,184,000.

Upon the payment or guarantee of payment by Defendant, or by whomever acts on its behalf, of the above price of $5,184,000 to the reasonable satisfaction of Plaintiff, any interested party may then undertake the appropriate measures or proceedings before the competent judicial, administrative or public authorities of Panama, the Dominican Republic, or any other country, for canceling Plaintiff's shareholder interest in DCH and transferring the same interest to Defendant, in order that the corresponding registries of those countries may list the proper capital distribution of DCH.

## ORDER GRANTING DEFENDANT'S MOTION TO CORRECT SCRIVENER'S ERRORS IN FINAL JUDGMENT CONFIRMING ARBITRATION AWARD

THIS CAUSE comes before the Court upon Defendant's Motion to Correct Scrivener's Errors (DE # 44), filed May 26, 2005.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is ORDERED and ADJUDGED that Defendant's Motion to Correct Scrivener's Errors (DE # 44) be, and the same is hereby, GRANTED. The May 24, 2005 Final Judgment (DE # 43) is **SET ASIDE** and the corrected Final Judgment (attached hereto) shall be filed of record by the Clerk of Court as the Final Judgment.