Russell S. BORST and Tina Borst,
Plaintiffs-Appellants,

v.

ALLSTATE INSURANCE COMPANY,
Defendant-Respondent.

Supreme Court

*No. 2004AP2004. Oral argument April 6, 2006.
—Decided June 13, 2006.*

2006 WI 70

(Also reported in 717 N.W.2d 42.)

For the plaintiffs-appellants, there were briefs (in the Court of Appeals and Supreme Court) by *John V. O'Connor* and *O'Connor, Dumez, Alia & McTernan, S.C.,* Kenosha, and oral argument by *John V. O'Connor.*

For the defendant-respondent, there was a brief by *John F. Fuchs, Catherine A. Goodman,* and *Fuchs, DeStefanis & Boyle, S.C.,* Milwaukee, and oral argument by *John F. Fuchs* and *Catherine A. Goodman.*

An amicus curiae brief was filed by *Mark A. Frankel* and *LaFollette Godfrey & Kahn,* Madison; *Kevin J. Lyons* and *Davis & Kuelthau SC,* Milwaukee, on behalf of the Alternative Dispute Resolution Section of the State Bar of Wisconsin.

¶ 1. JON P. WILCOX, J. This case comes to us on certification from the court of appeals. The appellants, Russell S. Borst and Tina Borst, appealed an order of the Circuit Court for Kenosha County, Michael S. Fisher, Judge, denying their motion to vacate an arbitration award.

¶ 2. The court of appeals certified the following questions: (1) Is there a presumption of impartiality among all arbitrators which may be "sidestepped" only by explicit agreement of all parties by which they may select arbitrators who in effect are their advocates? (2) Under Wis. Stat. § 788.10(1)(b) (2003–04),[1] can "evident partiality," due to a relationship between an arbitrator and a party be avoided by full disclosure at the outset and a declaration of impartiality? (3) Other than the deposition procedure outlined in Wis. Stat. § 788.07, is the nature and extent of discovery during the arbitration process governed by contract, the arbitrators' inherent authority, or a combination of the two?

¶ 3. We hold the following: (1) We adopt a presumption of impartiality among all arbitrators, whether named by the parties or not. This presumption may be rebutted, and an arbitrator may act as a non-neutral when the parties contract for non-neutral arbitrators or the arbitration rules otherwise provide for non-neutral arbitrators; (2) Evident partiality cannot be avoided simply by a full disclosure and a declaration of impartiality. In challenges to an arbitrator based on evident partiality where the disputed relationship is fully disclosed, circuit courts must remove an arbitrator prior to the arbitration, or vacate an arbitration award under Wis. Stat. § 788.10(1)(b) when a reasonable person would have serious doubts about the impartiality of the

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

arbitrator; and (3) Arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement, the parties are limited to the procedure for depositions, as described in Wis. Stat. § 788.07.

¶ 4. Applying the above standard, we conclude that Arbitrator Rick Hills (Hills), who serves as Allstate's attorney on an ongoing basis, demonstrated evident partiality such that the arbitration award must be vacated; therefore, we reverse the order of the circuit court denying the motion to vacate and remand to the circuit court to vacate the arbitration award and order a new arbitration.

I

¶ 5. Russell S. Borst (Borst) was involved in an automobile accident with an uninsured motorist on November 23, 2000. Borst was injured in the accident and received treatment. Subsequent to the accident, Borst sought reimbursement for his damages under his uninsured motorist coverage provided in an insurance policy issued by Allstate Insurance Company (Allstate).

¶ 6. In settlement discussions, Allstate stated that it believed Borst was 50 percent liable for the accident and thus would only be willing to pay 50 percent of the claim. Allstate also requested all medical records related to the claim be sent after Borst finished his treatment. A month later, Allstate again stated its position on liability remained unchanged after considering the statements from both drivers and the photographs of the vehicles and the intersection.

¶ 7. Borst subsequently provided his records, with the exception of two bills, which Borst indicated would be sent when they were received. In a letter dated February 6, 2002, Borst provided the missing bills, and documentation of Borst's wage loss. Further-

more, Borst indicated that if there was any additional information Allstate needed, it should advise as such. Eventually, Allstate made a settlement offer of $5,000.

¶ 8. In calculating the settlement offer, Allstate considered $4,331 in medical bills and $2,654 in lost wages, but indicated it thought Borst was 50 percent negligent for the accident. Borst rejected the settlement offer and requested arbitration in accordance with the insurance policy. The "If We Cannot Agree" provision of the policy reads in part as follows:

> If the insured person or we don't agree on that person's right to receive any damages or the amount, then at the written request of either the disagreement will be settled by arbitration. Arbitration will take place under the rules of the American Arbitration Association unless either party objects.

> If either party objects, the following method of arbitration will be used instead. The insured person will select one arbitrator. We will select another. The two arbitrators will select a third. If they cannot agree on a third arbitrator within 30 days, the judge of a court of record in the county of jurisdiction where arbitration is pending will appoint the third arbitrator. The written decision of any two arbitrators will determine the issues. The insured person will pay the arbitrator that person selects. We will pay the one we select. The expense of the third arbitrator and all other expenses of arbitration will be shared equally. However, attorney fees and fees paid to medical and other expert witnesses are not considered arbitration expenses. These costs will be paid by the party incurring them.

¶ 9. The parties elected to select arbitrators as provided for in the policy. Borst selected Eugene Gasiorkiewicz as his arbitrator, and Allstate responded by naming Hills. Borst immediately objected to Hills as an arbitrator because Allstate was a client of Hills' law

firm. Hills disputed Borst's contention that he could not be neutral, stating that "I can assure you that whenever I serve as an arbitrator I base my decisions on the evidence." Gasiorkiewicz and Hills then selected the third arbitrator.

¶ 10. Allstate subsequently served upon Borst a set of written interrogatories, a request for document production, and medical authorizations. In response, Borst filed a motion with the arbitration panel to quash this discovery as unnecessary. After substituting counsel, Allstate informed the arbitration panel it "wish[ed] to conduct the deposition of Mr. Borst and also obtain authorizations for release of records and without a formal order from the arbitration panel, that discovery may proceed." In support of its contention, Allstate emphasized the proof of claim provision of the insurance policy.[2] Additionally, Allstate filed a motion with the panel requesting that Borst's claim be dismissed for failure to answer the discovery or, in the alternative, for an order requiring him to appear for a deposition and comply with other policy provisions. On August 22, 2002, the arbitration panel denied Allstate's motion to dismiss Borst's claim. Further, Borst was ordered to give a deposition, supply medical authorizations, and cooperate in other appropriate discovery.

---

[2] This provision of the policy reads as follows:

PROOF OF CLAIM; MEDICAL REPORTS

As soon as possible, you or any other person making claim must give us written proof of claim. It must include all details we need to determine the amounts payable. We may also require any person making claim to submit to questioning under oath and sign the transcript. The insured person may be required to take medical examinations by physicians we choose, as often as we reasonably require. We must be given authorization to obtain medical reports and copies of records.

¶ 11. Borst indicated that he would not submit to a deposition, and he intended to challenge in court the appropriate extent of discovery as well as whether an attorney can act as an arbitrator in a case that involves one of his firm's clients. Allstate responded by electing not to depose Borst, but it did not waive its right to the deposition. Instead, Allstate chose to depose the other driver involved in the accident. Borst, in turn, provided a list of damages and confirmed the accuracy of all pre-arbitration discovery.

¶ 12. On December 5, 2002, Borst[3] responded by filing suit against Allstate, alleging breach of contract, bad faith, and fraud and misrepresentation. Borst also sought a permanent injunction enjoining arbitration. Allstate filed an answer along with a number of motions. Borst responded with a motion to bar further arbitration as a prerequisite to suit. In this motion, Borst also requested that if the arbitration was allowed to proceed, the court order Allstate to select another arbitrator. In its brief in opposition to Borst's motion, Allstate represented that while it did not believe anything prevented it from selecting an arbitrator with whom it had an ongoing relationship, "[n]evertheless, as discussed with Plaintiff's counsel in the past, in an effort to resolve this matter, Allstate is willing to choose a different arbitrator."

¶ 13. At the hearing on October 10, 2003, the circuit court remanded the matter back to the previous arbitration panel and held the other motions in abeyance pending the resolution of the arbitration.

---

[3] Borst actually filed suit with his wife, Tina Borst. For simplicity, we will continue to refer to the Borsts collectively as simply "Borst."

¶ 14. When the matter of Hills' participation came up at the motion hearing, the court stated, "Allstate indicated they would be willing to consider someone else. . . . See if you can agree on an arbitrator. Give me a list. If you can't, give me a list of those people each of you would believe would be a good arbitrator." To this, Allstate's attorney replied, "We'll do it that way. I would just go on the record as saying I don't plan on naming somebody who also does a boat load of work for the client."

¶ 15. Borst's attorney drafted a proposed order stating that "Allstate Insurance Company shall designate a new arbitrator, to serve in place of Attorney Rick Hills." Allstate's attorney asked the court to refrain from signing the order until he had a chance to confirm with Allstate its authorization to substitute Hills. A few days later, Allstate submitted an order without the mandate that Allstate switch arbitrators, and the court signed this order on November 1, 2003.

¶ 16. The arbitration panel eventually rendered a unanimous decision in the matter concluding the total value of the claim was $3,531 and each driver was 50 percent responsible for causing the accident for a net award to Borst of $1,765.50.

¶ 17. Allstate filed a motion for court confirmation of the arbitration award under Wis. Stat. § 788.09, and Borst filed a motion for vacation of the award under Wis. Stat. § 788.10 on the grounds that Hills is a member of a law firm that represents Allstate on a continuing basis, which rendered Hills partial in the matter. At the hearing on the matter, the circuit court stated the following:

> Well, the Court sees the problem; and had it been brought to my attention, I would have made other

371

suggestions for arbitrators; but based upon what the law is, there are no rules, and least that I can see, that I have found, that there is a presumption of validity, that there was a three-arbitrator panel, that it was a unanimous decision.

There has been provided no substantial evidence that there was partiality; and based upon that and the fact there needs to be some rules set up so we know where we are going, the Court is going to deny the motion to vacate the arbitration award and see where it goes from here.

As such, the circuit court confirmed the arbitration award, denied Borst's motion to vacate, and dismissed the matter on the merits in an order filed on July 13, 2004.

¶ 18. Borst appealed, and the court of appeals subsequently certified the matter to this court.

## II

¶ 19. We first address whether there is a presumption of impartiality that may be avoided if the parties explicitly contract for non-neutral arbitrators or if applicable arbitration rules provide for non-neutral arbitrators. Although not important to the resolution of this case since the parties agree that the arbitrators were intended to be neutral, today we adopt such a presumption of impartiality.

¶ 20. As noted in the amicus brief submitted by the Alternative Dispute Resolution (ADR) Section of the Wisconsin State Bar (State Bar), the appropriate function for party-appointed arbitrators generates a great deal of confusion within the ADR community. Part of the confusion stems from the fact that courts

have permitted the use of both neutral and non-neutral arbitrators in the arbitration process. *See* Seth H. Lieberman, *Something's Rotten in the State of Party-Appointed Arbitration: Healing ADR's Black Eye That is "Nonneutral Neutrals,"* 5 Cardozo J. Conflict Resol. 215 (2004). Additionally, parties frequently do not designate whether the party-appointed arbitrators are supposed to be neutral or non-neutral. We believe confusion will be lessened, as the State Bar suggests, by prescribing presumptive impartiality as the appropriate role for the party-appointed arbitrator, unless the parties contract for non-neutral arbitrators or the arbitration rules otherwise provide for non-neutral arbitrators.

¶ 21. Furthermore, we believe such a presumption is in accordance with the language of Wis. Stat. § 788.10(1)(b), which discusses the vacation of an arbitration award "[w]here there was evident partiality or corruption on the part of the arbitrators, *or either of them.*" (Emphasis added.) We interpret this language to mean that every arbitrator on the panel is supposed to be unbiased absent express contractual language or applicable arbitration rules to the contrary. *Diversified Mgmt. Servs., Inc. v. Slotten,* 119 Wis. 2d 441, 448, 351 N.W.2d 176 (Ct. App. 1984). In *Diversified,* the parties utilized a selection process of arbitrators similar to this case. On appeal, the parties differed on whether arbitrators chosen in this fashion were expected to be biased in favor of the choosing party. *Id.* at 447–48. The court rejected the supposed "modern view" that arbitrators selected by the parties are expected to be biased, and stated that "[i]f parties are to be encouraged to submit their disputes to arbitration as an alternative to litigation, they must be assured an impartial tribunal." *Id.* at 448. The court of appeals also pointed to the

language of Wis. Stat. § 788.10(1)(b), which "provides that awards shall be vacated upon a showing of evident partiality on the part of *either* of the arbitrators. This language demonstrates that the legislature did not contemplate partisan arbitrators." *Id.* (emphasis in original).

¶ 22. We note that our decision in *Richco Structures v. Parkside Village, Inc.*, 82 Wis. 2d 547, 263 N.W.2d 204 (1978), seems to suggest the opposite result, but a closer inspection of the facts demonstrates that our decision today is in accord with *Richco Structures*. In that case, the parties each appointed an arbitrator and those two arbitrators selected, in the words of the stipulated terms of the arbitration agreement, "a third, independent arbitrator." *Id.* at 550. Further, if the three arbitrators could not agree on a decision, the independent arbitrator's decision would be accepted as final and binding. *Id.* In determining whether there was evident partiality under what was then Wis. Stat. § 298.10(1)(b) (1975–76), we concluded that under the stipulation, sole decision-making power was, in effect, granted to the third, independent arbitrator. *Id.* at 557. As such, "since two of the arbitrators in the case at bar were effectively, and by design, representatives of the respective parties, our construction of 'evident partiality' should only be read to apply to the arbitrator intended by the parties to be neutral." *Id.* The facts in *Richco Structures* make clear that the language of the stipulation demonstrated the parties' intent that only the arbitrator picked by the two party-appointed arbitrators was to be "independent," especially given the fact that the two party-appointed arbitrators did not have final decision-making authority. We do not take the language of *Richco Structures* to mean that in all tripartite arbitration panels, only the third arbitrator is

374

subject to the impartiality requirement of § 788.10(1)(b), and therefore, *Richco Structures* is not contrary to our decision today that all arbitrators are presumed impartial.

¶ 23. The presumption we adopt today also puts Wisconsin in line with "the recent trend away from non-neutral party-appointed arbitrators and the heightened expectations of independence and neutrality of commercial arbitrators." Richard Chernick, *Arbitrator-Neutrality Rule Reflects Change in Ethics,* Daily Journal, Apr. 14, 2004, http://jamsadr.com/j_pub/show_article_print.asp?id=81. For example, on March 1, 2004, the American Arbitration Association and an American Bar Association task force promulgated an updated version of the Code of Ethics for Arbitrators in Commercial Disputes. The most striking difference between the original 1977 version and the 2004 version is the application of a presumption of neutrality to all arbitrators, including party-appointed arbitrators. In the Introductory Note on Neutrality, the 2004 Code of Ethics reads in part:

> The sponsors of this Code believe that it is preferable for all arbitrators including any party-appointed arbitrators to be neutral, that is, independent and impartial, and to comply with the same ethical standards. . . . This Code establishes a presumption of neutrality for all arbitrators, including party-appointed arbitrators, which applies unless the parties' agreement, the arbitration rules agreed to by the parties or applicable laws provide otherwise.

Chernick, *supra.* This presumption is then laid out in Canon IX of the 2004 Code of Ethics. *Id.* Arbitrators that are supposed to be predisposed to the position of the party appointing them are discussed in Canon X. *Id.*

¶ 24. As the State Bar recognizes, a presumption of impartiality will greatly reduce the amount of process-related disputes initiated by a party who concludes, either during or after the arbitration, that they had not known that partial arbitrators were permitted. Furthermore, a presumption of impartiality would force sophisticated commercial parties who affirmatively desire to use partial arbitrators to reach a clearer and more comprehensive set of ground rules before taking their dispute to an arbitration panel. For these reasons, we conclude that adopting a default presumption of impartiality is the prudent course of action.

¶ 25. For purposes of this decision, however, such a presumption is immaterial. That is, although the arbitration clause in the contract was silent as to the intent of the parties on the role of the arbitrators, at oral argument the parties agreed that their understanding of the arbitration provision in the insurance contract was that the *entire* panel was to be neutral. It is with this understanding in mind that the parties proceeded into arbitration and with which we review the circuit court's decision in this case.

### III

**█**

¶ 26. We now proceed to the next question certified by the court of appeals, which concerns the scope of Wis. Stat. § 788.10(1)(b), and whether evident partiality due to a relationship between an arbitrator and a party can be avoided by full disclosure at the outset and a declaration of impartiality. If so, the arbitration award need not be vacated, as Hills disclosed his relationship with Allstate. If evident partiality cannot be avoided

simply by disclosure, we must determine whether the arbitration panel's award in this case must be vacated under § 788.10(1)(b).

¶ 27. Allstate argues that there is no law precluding an arbitrator from proceeding after he or she fully discloses a relationship with one of the parties. In fact, Allstate continues, under a literal reading of Wisconsin case law, there can be no evident partiality upon disclosure of a relationship. Thus, under Allstate's view, because Hills disclosed his relationship with Allstate at the outset, Hills properly sat on the arbitration panel.

¶ 28. In our view, Allstate's position is entirely unreasonable, especially considering the facts of this case. As noted above, the parties agree that the entire panel was to be neutral. Despite this understanding, Allstate still argues that disclosure is all that is necessary for a "neutral" arbitrator. Under Allstate's view then, Allstate's corporate counsel could serve as an arbitrator, as long as this relationship was disclosed. This example demonstrates the fallacy of Allstate's position.

¶ 29. The more difficult issue for us concerns what a party is entitled to when it objects to another party's arbitrator for reasons of partiality at the beginning of or during an arbitration. As the court of appeals put it, is disclosure all a party can expect until the award is made, at which time it can be challenged pursuant to Wis. Stat. § 788.10(1)(b)?

¶ 30. Admittedly, our case law is generally limited to post-award challenges addressing whether an arbitrator's failure to disclose a particular relationship to one of the parties constituted evident partiality. *See DeBaker v. Shah,* 194 Wis. 2d 104, 533 N.W.2d 464 (1995); *Sch. Dist. of Spooner v. Nw. United Educators,* 136 Wis. 2d 263, 401 N.W.2d 578 (1987), *overruled by*

*DeBaker,* 194 Wis. 2d 104; *Richco Structures,* 82 Wis. 2d 547. However, other federal[4] and state decisions provide some guidance.

¶ 31. There is authority for the view that an arbitrator cannot be removed before an award has been rendered. *See e.g., Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, (2d Cir. 1997) (holding that the Federal Arbitration Act did not permit pre-award removal of an arbitrator considering that the plaintiff was aware of the arbitrator's relationship with the defendant when the arbitration agreement was reached); *Astoria Med. Group v. Health Ins. Plan of Greater N.Y.,* 182 N.E.2d 85 (N.Y. 1962) (holding that it was improper for the court to tamper with the arbitration format designed by the parties and the appropriate approach was to attack the arbitration award after it had been rendered).

¶ 32. However, there is also authority for the opposite position. *See, e.g., Arista Mktg. Assocs., Inc. v. Peer Group, Inc.,* 720 A.2d 659 (N.J. Super. Ct. App. Div. 1998); *Excelsior 57th Corp. v. Kern,* 630 N.Y.S.2d 492 (N.Y. App. Div. 1995) (dismissing a challenged arbitrator before an award was made because of his participation in a prior arbitration between the same parties). In *Arista,* the primary issue was whether the New Jersey statutes[5] authorized the pre-arbitration removal of a party-appointed, non-neutral arbitrator where evident

[4] Wisconsin Stat. § 788.10 is nearly identical to 9 U.S.C. § 10 (2000). Federal cases construing the Federal Arbitration Act are persuasive authority in interpreting § 788.10. *Diversified Mgmt. Servs., Inc. v. Slotten,* 119 Wis. 2d 441, 446, 351 N.W.2d 176 (Ct. App. 1984).

[5] New Jersey Stat. Ann. § 2A:24–8(b) (2003–04) provides that a court shall vacate arbitration awards "(w)here there was either evident partiality or corruption in the arbitrators, or any thereof."

partiality was demonstrated. The *Arista* court held that under New Jersey law, judicial disqualification of an arbitrator demonstrating evident partiality was permitted whenever discovered. *Id.* at 664. Like Wisconsin, New Jersey has a pre-arbitration disclosure requirement which, in the *Arista* court's words, " 'reduce[s] the likelihood of potentially wasteful post-arbitration challenges[,]' " *id.* at 665 (citation omitted), and "leave[s] to the parties themselves the initial decision as to whether to object to an arbitrator designated by the other side and, if necessary, to seek judicial determination of whether that arbitrator appears to be too partial to be permitted to participate in the arbitration." *Id.* (citation omitted).

¶ 33. Likewise, part of this court's reasoning in requiring pre-arbitration disclosure was to allow the parties and not the courts to gauge "the arbitrator's conscious or unconscious predilection to favor one of the parties because of the arbitrator's own interests." *Richco Structures,* 82 Wis. 2d at 560–61. This reasoning was also echoed by the concurring opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 151 (1968) (White, J., concurring) (reasoning that pre-arbitration disclosure is beneficial in arbitrations because with this information parties are "free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity"). In Justice White's view, "[t]he arbitration process functions best when an amicable and trusting atmosphere is preserved and there is voluntary compliance with the decree, without need for judicial enforcement." *Id.*

¶ 34. We believe this case provides an example of a situation where a pre-arbitration challenge is necessary and efficient. Although Borst challenged Allstate's

selection of Hills from the beginning, Allstate refused to select another arbitrator. It seems to us that in most instances, in the interest of fundamental fairness, a challenged arbitrator will simply be replaced by the opposing party, especially if on a reasonable basis, as in this case. Unfortunately, that did not happen here, and we conclude a pre-arbitration challenge is an appropriate remedy in situations such as this. Furthermore, for reasons we discuss below, the circuit court should have ordered Allstate to replace Hills upon Borst's pre-arbitration challenge.

¶ 35. In sum, we adopt the position taken by the *Arista* court. That is, unless the parties have contracted to use a specific arbitrator, pre-arbitration challenges to arbitrators selected by the parties are permissible. Such pre-arbitration challenges promote efficiency in the arbitration process when a party reasonably objects to the use of an arbitrator selected by the opposing party as Borst did of Hills in this case. We further believe pre-arbitration challenges are especially relevant in cases such as this where the parties agree that the arbitrators are to be neutral. In pre-arbitration challenges, a party may seek the removal of a challenged arbitrator under the general equity powers of the circuit court.[6] Under this power of equity, the circuit court must order the party to select another arbitrator if the court determines the challenged arbitrator demonstrates "evident partiality" as that term is defined below.

---

[6] *See* W.J. Dunn, *Disqualification of Arbitrator by Court or Stay of Arbitration Proceedings Prior to Award, on Ground of Interest, Bias, Prejudice, Collusion, or Fraud of Arbitrators,* 65 A.L.R. 2d 755 § 2(c) (1959) (citing *e.g., Gaer Bros., Inc. v. Mott,* 130 A.2d 804 (Conn. 1957); *Palmer Plastics, Inc. v. Rubin,* 108 N.Y.S. 2d 514 (N.Y. Sup. Ct. 1951)).

¶ 36. We also reiterate that arbitrators should continue to disclose relevant relationships in accordance with our case law, *see DeBaker*, 194 Wis. 2d 104, and such disclosure puts the burden on the opposing party to object. A failure to initially object to the selection of an arbitrator, based on the information disclosed prior to the arbitration, may act as a forfeiture of any subsequent post-arbitration challenge on the disclosed information.[7] *See e.g., Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 593 (8th Cir. 1998); *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 13 (1st Cir. 1989). Post-arbitration challenges, of course, are permissible under Wis. Stat. § 788.10(1)(b) based on the circumstances of the arbitration itself or on information discovered post-arbitration.

¶ 37. Allstate contends that this case presents such an instance of forfeiture,[8] in that Borst forfeited his right to make a post-arbitration challenge to Allstate's selection of Hills by failing to object to the November 1, 2003, order of the circuit court. Moreover, Allstate argues that because Borst did not sufficiently preserve this issue in the circuit court, he is not entitled

---

[7] In some cases, the significance of the information disclosed prior to the arbitration will not be apparent until after the arbitration commences. In such an appropriate instance, a subsequent challenge to the arbitrator based on the pre-arbitration information is permissible.

[8] Although Allstate argues that Borst "waived" his right to object to Allstate's selection of Hills, we believe this is really more an issue of forfeiture "because it refers to the forfeiture of a right by silence rather than the intentional relinquishment of a known right." *State v. Huebner*, 2000 WI 59, ¶ 11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (citations omitted).

to review of this issue as a matter of right. *See State v. Huebner,* 2000 WI 59, ¶ 11, 235 Wis. 2d 486, 611 N.W.2d 727.

¶ 38. From our review of the record, we conclude that Borst sufficiently pleaded and argued the issue of Hills' partiality to the circuit court, prior to the commencement of the arbitration, such that the issue was not forfeited. First, Borst objected to Allstate's choice of Hills almost immediately after Allstate selected him. Once the arbitration process came to a halt, Borst filed suit. In the complaint, Borst alleged that Allstate did not name an arbitrator who was "fair and unbiased" but instead named Hills, "an attorney whose firm had represented Allstate Insurance Company on numerous occasions, and was clearly biased towards them." Further, the complaint alleged that when Borst objected, Hills "refused to recuse himself and Allstate Insurance Company failed to appoint an unbiased arbitrator." These allegations formed the basis of Borst's cause of action for a permanent injunction.

¶ 39. Borst again raised the objection in a subsequent motion for an order barring further arbitration. In the motion, Borst requested that if his claim was ordered back into arbitration, Allstate should be required to name another arbitrator because of the attorney/client relationship between Hills and Allstate. In its response brief, Allstate represented that in an effort to resolve the matter, it would be willing to choose a different arbitrator. Then again, at the motion hearing, Allstate indicated it would be willing to consider another arbitrator who did not do a "boat load" of work for Allstate.

¶ 40. It is not clear from the record why the circuit court elected to sign Allstate's submitted order,

which did not require Hills' removal, as opposed to Borst's, and admittedly, Borst would have been well-served by immediately moving for reconsideration of the order signed by the circuit court. However, Borst clearly objected to the use of Hills as an arbitrator on a number of occasions prior to the commencement of the arbitration. Furthermore, Allstate represented to Borst and the court that it would be willing to choose a different arbitrator, but never followed through with these assurances.

¶ 41. In sum, we believe Borst sufficiently preserved his right to challenge the appointment of Hills in both a post-arbitration motion with the circuit court under Wis. Stat. § 788.10(1)(b) and on appeal to this court. In other words, Borst did not forfeit any right to challenge Hills' appointment to the arbitration panel.

¶ 42. Having disposed of Allstate's forfeiture argument, we next turn to the issue of whether there was evident partiality on the part of Hills, such that the arbitration award must be vacated. In general, "[b]ecause the policy of this state is to foster arbitration as an alternative to litigation, arbitration awards are presumed to be valid. An award will be set aside only upon a showing that one of the statutory grounds for vacatur exists." *Richco Structures,* 82 Wis. 2d at 553. "Essentially the court's role is supervisory in nature—to insure that the parties receive what they bargained for when they agreed to resolve certain disputes through final and binding arbitration." *Madison Teachers, Inc. v. Madison Metro. Sch. Dist.,* 2004 WI App 54, ¶ 9, 271 Wis. 2d 697, 678 N.W.2d 311.

¶ 43. In this case, Borst argues that the award must be vacated under Wis. Stat. § 788.10(1)(b), which

reads, in pertinent part, as follows: "[T]he court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration: . . . (b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them[.]" The circuit court must vacate an arbitration award if the proponent proves, by clear and convincing evidence, that there was evident partiality on the part of the arbitrator. *DeBaker*, 194 Wis. 2d at 117. Whether there is evident partiality on the part of the arbitrator is a question of law that we review de novo. *Id.* at 112.

¶ 44. We hold that there was evident partiality on the part of Hills, such that vacation of the arbitration award is mandated. That is, based on evidence that is clear, plain, and apparent, a reasonable person would have serious doubts about the impartiality of Hills, on a neutral arbitration panel. In this case, the fact that Hills had a substantial, ongoing attorney/client relationship with Allstate leads us to conclude, as a matter of law, that Hills demonstrated evident partiality such that the arbitration award must be vacated.

¶ 45. For our interpretation of the phrase evident partiality, we first turn to the United States Supreme Court's decision in *Commonwealth Coatings,* 393 U.S. 145, which addressed whether an arbitration award should be vacated on the grounds of evident partiality, albeit on the grounds of a failure of the arbitrator to disclose a relationship with a party. In that case, a plurality of the Court suggested that arbitrators are to meet the ethical standards of federal judges and the arbitrators "not only must be unbiased but also must avoid even the appearance of bias." *Id.* at 150.

¶ 46. However, Justice White wrote a concurrence, in which he made it clear that the Court did not decide that arbitrators should be held to the standard of judges. *Id.* (White, J., concurring). Furthermore, the concurrence concluded that arbitrators should not automatically be disqualified by a business relationship with a party as long as there is mandatory disclosure of relationships "where the arbitrator has a *substantial interest* in a firm which has done more than trivial business with a party[,]" *id.* at 151–52 (emphasis added), as the parties are then "free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity." *Id.* at 151.

¶ 47. Although we have not officially adopted Justice White's concurrence as authoritative, we have noted the federal courts of appeals apparent preference for its reasoning. *DeBaker,* 194 Wis. 2d at 113 n.4. In *DeBaker,* we analyzed whether an arbitrator demonstrated evident partiality because he did not disclose that he received campaign contributions from members of the law firm representing one of the parties. *Id.* at 108. We concluded that the arbitrator did not demonstrate evident partiality within the meaning of § 788.10(1)(b) using the following standard:

> "[E]vident partiality" exists only when a *reasonable person* knowing the previously undisclosed information would have had "such doubts" regarding the impartiality of the arbitrator that the person would have taken action on the information. "In other words, a reasonable person would conclude it 'evident,' that is clear, plain, and apparent from the undisclosed information, that partiality is so likely that action was required." Put another way, the standard is not simply that a reasonable person, upon learning of the undisclosed information, would investigate further. The standard is

385

> whether the reasonable person, after further investigation, would conclude that "partiality is so likely that action was required."

*Id.* at 116–17 (emphasis in original) (internal citation omitted). We noted that this standard was in accord with the federal courts' construction of the phrase evident partiality. *Id.* at 117 n.5 (citing *Morelite Const. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir. 1984) ("[W]e hold that 'evident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."); *Toyota of Berkeley v. Auto. Salesman's Union, Local 1095, United Food and Commercial Workers Union,* 834 F.2d 751, 756 (9th Cir. 1987) (to show evident partiality on part of arbitrator party alleging bias must demonstrate facts that create a "reasonable impression of partiality"); *Dowd v. First Omaha Sec. Corp.,* 495 N.W.2d 36, 43 (Neb. 1993) (adopting *Morelite Const.* test as appropriate for considering whether arbitrator was evidently partial under federal law)).

¶ 48. In *DeBaker,* we essentially restated the test enunciated in *Richco Structures,* 82 Wis. 2d 547. The holding of that case principally dealt with the adoption of a requirement for full disclosure at the outset of arbitration. However, in adopting such a rule, the court stated as a rationale that it would help eliminate litigation where the courts would have to determine the fine line between whether "the relationships were casual, innocent, superficial, isolated, insignificant or inconsequential . . . or whether the relationships were substantial." *Id.* at 560. Thus, this language suggests a substantial relationship between an arbitrator and a party is indicative of evident partiality on the part of

the arbitrator. *See also Commonwealth Coatings*, 393 U.S. at 151–52 (White, J., concurring).

¶ 49. In conformity with the language from our previous decisions in *DeBaker* and *Richco Structures*, and in the interest of fostering neutral arbitration panels, we adopt a similar standard for cases such as this where the disputed relationship was disclosed prior to the arbitration. That is, the circuit court must vacate an arbitration award under Wis. Stat. § 788.10(1)(b) due to evident partiality if based on evidence that is clear, plain, and apparent, a reasonable person would have serious doubts about the impartiality of the arbitrator.

¶ 50. We first acknowledge that this standard must be taken with the perspective that in most instances, party-appointed arbitrators are paid by the party who selects the arbitrator. Indeed, in this case, the arbitration provision in the insurance contract provides as such. However, this is a typical aspect of arbitration.

¶ 51. Furthermore, in adopting this standard we acknowledge that arbitrators with experience in particular fields can be effective in arbitrations. That is, Allstate is well within its right to appoint an arbitrator with a prominent background in insurance defense. Indeed, such an arbitrator may have had indirect dealings with Allstate in the insurance industry. However, in this case, there is a direct, substantial relationship between Hills and Allstate. In other words, Hills has represented Allstate in a number of lawsuits and apparently will continue to represent Allstate in the future.

¶ 52. In sum, we conclude that the ongoing attorney/client relationship between Allstate and Hills

is of such a substantial nature that a reasonable person would have serious doubts about the partiality of Hills. Therefore, as a matter of law, Hills was evidently partial under Wis. Stat. § 788.10(1)(b), and the arbitration award must be vacated.

## IV

¶ 53. Finally, we address the third certified issue concerning the nature and extent of discovery permitted during an arbitration process, absent any express contractual provisions that detail the parties' intent. Again, in this case, the arbitration provision of the contract is silent as to the terms of discovery, along with many other conditions of the arbitration.

¶ 54. Borst essentially contends that discovery in arbitration is the exception and not the rule. Borst argues that in an arbitration of a first party insurance claim, and absent extraordinary circumstances, the parties should simply submit their cases to the arbitrators. Unfettered discovery, Borst argues, defeats the general purposes of arbitration to be faster, less formal, and less expensive. *See Employers Ins. of Wausau v. Jackson,* 190 Wis. 2d 597, 610–11, 527 N.W.2d 681 (1995). In support of this argument, Borst points to the Wisconsin Arbitration Act, ch. 788, which makes no provisions for discovery apart from court-ordered depositions. Wis. Stat. § 788.07. Furthermore, in this particular case, Borst maintains that there was no real need for discovery, given that there was no claim of permanent injury, the medical records and bills had been supplied, and Allstate claimed to have fully assessed liability before it made its offer.

¶ 55. For its part, Allstate submits that because the legislature allowed for the taking of depositions during arbitration, then it surely would allow for other

less costly forms of discovery. The legislature, Allstate argues, left the extent of discovery to the discretion of the arbitrators. Allstate further contends that the arbitrators will be most familiar with the facts of the case and the need for appropriate discovery, and therefore should be left with this discretion.

¶ 56. We conclude that arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement to the contrary, the parties are limited to depositions as spelled out in Chapter 788. We agree with the State Bar in that parties would be well-served to either: (1) explicitly address the scope of discovery and the procedures to resolve disputes regarding discovery; or (2) reference a set of established ADR provider rules that specify how discovery should be handled.

¶ 57. In our view, arbitrators do not have the inherent authority to determine the necessity and scope of discovery allowed because, quite simply, there is no statutory authority providing for discovery outside of the procedures for depositions enumerated in Wis. Stat. § 788.07.

¶ 58. Essentially, the main Wisconsin law we have to guide us on this issue is the language of Wis. Stat. § 788.07 itself:

> *Depositions.* Upon petition, approved by the arbitrators or by a majority of them, any court of record in and for the county in which such arbitrators, or a majority of them, are sitting may direct the taking of depositions to be used as evidence before the arbitrators, in the same manner and for the same reasons as provided by law for the taking of depositions in suits or proceedings pending in the courts of record in this state.

This section does not speak to, for example, interroga-

tories, requests for production, or medical authorizations. Indeed, even looking beyond this particular section, the Wisconsin Arbitration Act does not speak to any other form of discovery. To allow for the amount of discovery Allstate seeks, we would have to read more into § 788.07 than is present in the statutory language. Such a decision would violate our well-settled canon of statutory interpretation that if the language is plain, we ordinarily stop the inquiry. *State ex rel. Kalal v. Cir. Ct. for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110..

¶ 59. Importantly, arbitration is a matter of contract. *See* Jay E. Grenig & Nathan A. Fishbach, *Methods of Practice,* 2A *Wisconsin Practice Series* § 86.40 at 272 (4th ed. 2004). Therefore, the amount of authority vested in the appointed arbitrators and the specifics of the arbitration process are, in turn, governed by the contract. Indeed, parties can contract to allow arbitrators a wide amount of latitude in managing the arbitration, subject to the constraints of the law. *See Employers Ins. of Wausau v. Certain Underwriters at Lloyd's London,* 202 Wis. 2d 673, 552 N.W.2d 420 (Ct. App. 1996). Simply put, without a contractual provision granting some form of authority on the arbitrator, there is no "inherent authority" under Wisconsin law that an arbitrator can fall back on.[9] Thus, absent a contractual

---

[9] Some jurisdictions have determined that discovery during arbitration is at the discretion of the arbitrator. *See e.g., Rintin Corp., S.A. v. Domar, Ltd.,* 374 F. Supp. 2d 1165, 1170 (S.D. Fla. 2005); *McCrary ex rel. McCrary v. Byrd,* 559 S.E.2d 821, 826 (N.C. Ct. App. 2002). However, there is authority for the opposite conclusion. That is, when parties submit their disputes to arbitration, "they relinquish the right to certain procedural niceties which are normally associated with a formal trial. One

provision specifying how discovery will be handled, the parties are limited to the discovery procedures provided in the statutes.

¶ 60. A grant of such "inherent authority" in arbitrators by this court would give us pause as we do not want to turn the arbitration process into another trial system. We believe the better approach is to leave it to the parties, in the future, to ensure arbitration agreements are clearly drafted, and detail the necessary components and procedures of the desired arbitration.

¶ 61. Additionally, the goal of arbitration is "to resolve the entire controversy out of court without the formality and *expense* that normally attaches to the judicial process." Grenig & Fishbach, *supra,* § 86.40 at 272 (emphasis added). We believe unfettered discovery, as the arbitration panel granted to the parties here, is contrary to the goals of arbitration, especially when considered with the relatively small amount of the underlying claim and the amount of information Allstate already had at its disposal prior to the arbitration.

¶ 62. In this case, there were no set provisions in the insurance contract that detailed the terms of the discovery in the arbitration.[10] Therefore, if the parties

---

of these accoutrements is the right to pre-trial discovery." *Burton v. Bush,* 614 F.2d 389, 390 (4th Cir. 1980).

[10] Allstate maintains in its brief that the rules of the American Arbitration Association (AAA) apply to this case. This contention is problematic for two reasons. First, it is unclear which set of arbitration rules promulgated by the AAA would be applicable. Second, at oral argument, counsel for Allstate conceded that, as provided for in the contract, the parties went a "different route" for the arbitration than that provided by the AAA by choosing their own arbitrators. As such, we conclude that no rules of the AAA are binding on our decision.

decide to conduct another arbitration, discovery will be limited to depositions as detailed in Wis. Stat. § 788.07.

## V

¶ 63. In sum, we hold the following: (1) We adopt a presumption of impartiality among all arbitrators, whether named by the parties or not. This presumption may be rebutted and an arbitrator may act as a non-neutral when the parties contract for non-neutral arbitrators or the arbitration rules otherwise provide for non-neutral arbitrators; (2) Evident partiality cannot be avoided simply by a full disclosure and a declaration of impartiality. In challenges to an arbitrator based on evident partiality where the disputed relationship is fully disclosed, circuit courts must remove an arbitrator prior to the arbitration, or vacate an arbitration award under Wis. Stat. § 788.10(1)(b) when a reasonable person would have serious doubts about the impartiality of the arbitrator; and (3) Arbitrators have no inherent authority to dictate the scope of discovery and absent an express agreement, the parties are limited to the procedure for depositions, as described in Wis. Stat. § 788.07.

¶ 64. Applying the above standard, we conclude that Arbitrator Hills, who serves as Allstate's attorney on an ongoing basis, demonstrated evident partiality such that the arbitration award must be vacated; therefore, we reverse the order of the circuit court denying the motion to vacate and remand to the circuit court to vacate the arbitration award and order a new arbitration.

*By the Court.*—The order of the circuit court is reversed, and the cause is remanded.