PILGRIM INVESTMENT CORPORATION, a Wisconsin corporation, Petitioner-Respondent,

v.

Richard F. REED, Sr., and Q-Development Corporation, a Wisconsin corporation, Respondents-Appellants.†

Court of Appeals

*No. 89–1085. Submitted on briefs March 29, 1990.—Decided May 16, 1990.*

(Also reported in 457 N.W.2d 544.)

†Petition to review denied.

677

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Alan H. Deutch* of *Deutch, Hansher & Burns* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Roy E. Wagner* and *Robert A. McNamara* of *Niebler & Niebler* of Menomonee Falls.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   Richard F. Reed, Sr., and Q-Development Corporation (Reed) appeal from a circuit court order declaring moot Pilgrim Investment Cor-

poration's (Pilgrim) petition to compel Reed to nominate an arbitrator pursuant to the parties' arbitration agreement. In light of the petition's mootness, the circuit court further ordered the parties to proceed with the arbitration pursuant to the agreement.

On appeal, Reed contends: (1) that the circuit court could not declare the matter moot and yet order the parties to proceed to arbitration; and (2) that the court should have addressed Reed's claim that the arbitration agreement was procured by fraud, misrepresentation and coercion. We conclude that the mootness of Reed's failure to nominate an arbitrator did not preclude the circuit court from further ordering the parties to proceed with arbitration. We also conclude that the circuit court correctly determined that Reed, by participating in the arbitration process, was barred from raising his defense of fraud, misrepresentation and coercion. Therefore, we affirm the circuit court order.

## FACTS AND PROCEDURAL HISTORY

The essential facts and history of this case, while lengthy, are not in dispute. Pilgrim and Reed entered into a Joint Venture Agreement on May 16, 1985. The purpose of the joint venture was to develop, sell and profit from real estate investment and development. Various disputes arose between Pilgrim and Reed as a result of the joint venture. In order to resolve these disputes, Pilgrim and Reed entered into an arbitration agreement on February 18, 1988.[1] The relevant portions

---

[1]Actually, the agreement between Pilgrim and Reed provided a threshold "non-arbitration" method by which the parties could resolve their differences. The arbitration provisions became effective only if the parties could not resolve their disputes pursuant to this mechanism. The "non-arbitration" process did not bring

of the agreement provide:

> 4.   PILGRIM, at its option, may name an arbitrator for submission of said disputes. Within fifteen (15) days after written notice of Pilgrim's naming of said arbitrator, Q and REED shall name its own arbitrator. Thereafter, the two of said arbitrators shall select a third . . .. This arbitration, if elected, by PILGRIM, shall be binding upon the parties.
>
> . . ..
>
> 6.   In the event of litigation arising out of this Agreement or the transaction hereunder, the prevailing party shall be entitled to actual attorneys fees and costs.

Pursuant to this agreement, Pilgrim called for mandatory arbitration and named its arbitrator, Attorney Robert A. Teper, by written notice to Reed on August 4, 1988. Reed named his arbitrator, Attorney Daniel Heiden, on August 18. The same day, Pilgrim notified the selected arbitrators of their obligation to name a third arbitrator. Reed's arbitrator, Attorney Heiden, did not respond to this request. Thereafter, both Pilgrim and its arbitrator, Attorney Teper, made repeated requests to Reed's arbitrator, Attorney Heiden, to assist in the naming of the third arbitrator. These efforts proved fruitless.

Pilgrim responded by filing this action, a petition pursuant to sec. 788.03, Stats., on December 7, 1988. Pilgrim requested relief in the form of: (1) an order compelling Attorney Heiden to assist Attorney Teper in the selection of the third arbitrator; and (2) an order for enforcement of the arbitration agreement. Pilgrim also

---

about a solution. Therefore, we are only concerned with the arbitration provisions of the agreement.

requested its costs and attorney's fees as provided in the agreement.

Section 788.03, Stats., provides, in relevant part:[2]

**Court order to arbitrate; procedure.**

The party aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration, may petition any court of record having jurisdiction of the parties or of the property for an order directing that such arbitration proceed as provided for in such agreement.

Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made as provided by law for the service of a summons.

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

If the making of the arbitration agreement or the failure, neglect or refusal to perform the same is in issue, the court shall proceed summarily to the trial thereof. If no jury trial is demanded the court shall hear and determine such issue.

Where such an issue is raised, either party may, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue to a jury called and impaneled as provided in s. 756.096.

The hearing on Pilgrim's petition was scheduled for January 9, 1989. However, after commencement of this

---

[2]Although our recital of the statute is verbatim, we have broken the single paragraph form of the statute into multiple paragraphs for the ease of the reader.

action, Attorney Heiden responded to Pilgrim's and Attorney Teper's requests for cooperation and, five days before this scheduled hearing, Attorney Heiden and Attorney Teper named the third arbitrator. The next day, Attorney Heiden contacted Pilgrim's attorney and requested that Pilgrim's petition be discontinued since the third arbitrator had been appointed. Pilgrim's counsel agreed to this proposal *if* Reed would pay the attorney's fees Pilgrim had incurred as a result of the lawsuit. Later that same day, Reed delivered a check in the amount of $500 in payment of those fees.

Two months later, nearly three months after this action was commenced, and over thirteen months after the arbitration agreement was signed, Reed filed an "answer" in response to Pilgrim's petition. The "answer" recited an "affirmative defense" of fraud, misrepresentation and coercion in the making of the arbitration agreement.

Pilgrim responded with a motion titled "Motion for Voluntary Dismissal of Petition." However, the body of the motion requested two forms of relief based on separate grounds: (1) that the request for enforcement of the "third arbitrator" provision of the agreement be dismissed as moot; *and* (2) that the circuit court order the arbitration to proceed pursuant to the agreement because Reed was not entitled to challenge the enforceability of the agreement.

After hearing the arguments of the parties, the circuit court agreed that Pilgrim's request for enforcement of the "third arbitrator" provision was moot. Accordingly, the court dismissed this aspect of the action. The court separately addressed Reed's "affirmative defense" and concluded that Reed had failed to timely raise his defense because he had participated in the arbitration process. Reed appeals.

## EFFECT OF MOOTNESS RULING

Reed argues that the circuit court's determination that Pilgrim's request for enforcement of the agreement's "third arbitrator" provision was moot precluded the court from further ordering the parties to proceed with arbitration. This argument, we conclude, oversimplifies the nature of Pilgrim's petition and the court's final determination.

Pilgrim's action was not only for enforcement of the "third arbitrator" provision. It was also for enforcement of the arbitration agreement. Pilgrim expressly invoked sec. 788.03, Stats., which recognizes that a party may petition for "an order directing that such arbitration proceed as provided for in such agreement." Among the relief which the trial court may grant is to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* Pilgrim expressly sought this relief in its petition.

This same theme was echoed in Pilgrim's motion for voluntary dismissal where Pilgrim sought two forms of relief: (1) dismissal of the application for an order seeking enforcement of the "third arbitrator" provision as moot; *and* (2) an order directing the parties to proceed with the arbitration. When the circuit court granted Pilgrim's first request because the "third arbitrator" issue was moot, the court still was confronted with Pilgrim's request that the court order the parties to proceed to arbitration. The only resistance offered by Reed to this request was his "affirmative defense" of fraud, misrepresentation and coercion, a matter we will address later.

■

While, in hindsight, we might say that Pilgrim's motion for voluntary dismissal might have been more carefully titled, the substantive content of the motion

reveals the two separate forms of relief sought. We see no internal inconsistency in the trial court's resultant rulings. The final written order entered by the trial court in this case clearly lays out the two distinct bases upon which the court ruled—mootness as to the "third arbitrator" provision and untimeliness as to Reed's "affirmative defense."

## REED'S WAIVER OF HIS DEFENSES

Reed next argues that the trial court should not have dismissed Pilgrim's petition without first addressing his "affirmative defense" of fraud, misrepresentation and coercion in Reed's "answer."

We first make some observations about the procedural aspects of sec. 788.03, Stats. The statute does not contemplate a responsive pleading such as the "answer" filed here by Reed. Rather, the statute simply provides that after service of the petition "the court shall hear the parties." *Id.* In addition, the issues are limited to "the making of the arbitration agreement or the failure, neglect or refusal to perform" under the agreement. *Id.* Thus, an oral response can be sufficient to raise an issue recognized under the statute. Although Reed's written "answer" was unnecessary, we nonetheless commend the practice to the bar since it serves to better clarify and narrow the matters at issue.

Reed's "affirmative defense" of fraud, misrepresentation and coercion appears to raise an issue under the statute since it travels to "the making of the agreement." Pilgrim contends, however, that Reed was barred from litigating this defense because he had already significantly participated in the arbitration process to Pilgrim's detriment.

This is an open question in Wisconsin. Pilgrim and Reed are each able to cite authorities from other jurisdictions which support their respective positions. Reed relies upon the line of cases set forth at Annotation, *Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability,* 33 A.L.R.3d 1242, 1250–53 (1970), which hold that selection of an arbitrator does not result in a bar. Reed argues that the majority rule is that participation in an arbitration hearing on the merits will result in waiver of the issue of arbitrability, but that the right to raise the issue is preserved by the making of a timely objection before a hearing on the merits. *Id.* at 1244.

Pilgrim cites to cases where selection of an arbitrator constituted a bar. All these cases, however, are from New York which has a statute that expressly recognizes participation in the selection of an arbitrator as a bar to a collateral attack on the arbitration agreement. *See, e.g., National Cash Register Co. v. Wilson,* 171 N.E.2d 302 (1960). The Wisconsin statutes do not contain such a provision.

We conclude that, absent a reservation of rights, "partial participation" in the arbitration process can serve to estop a party from challenging the arbitration agreement.[3] Even though an arbitration process has not proceeded to a hearing on the merits, substantial time, money and effort in preparation may well have been

---

[3]The trial court based its ruling precluding Reed from litigating his defense on "timeliness." Pilgrim bases its argument on waiver. We conclude, however, that estoppel is the appropriate doctrine. Although these three concepts are closely related, they also present differences. We may affirm a trial court on a theory or reasoning not relied upon by that court. *State v. Holt,* 128 Wis. 2d 110, 124–25, 382 N.W.2d 679, 687 (Ct. App. 1985).

invested in the undertaking. Absent a reservation of objection to the arbitration process, when one party participates in preliminary arbitration procedures preparatory to the hearing on the merits, that party is signaling to the other side that full participation in the process is intended.

An estoppel consists of action or nonaction on the part of one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment. *Nolden v. Mutual Benefit Life Ins. Co.,* 80 Wis. 2d 353, 369, 259 N.W.2d 75, 82 (1977). In this case, Reed never raised any objection to the arbitration agreement at its making. Based upon Reed's expected compliance with the agreement, Pilgrim named its arbitrator. Reed then named his arbitrator, inducing Pilgrim and its arbitrator to seek the naming of the third arbitrator. Reed's arbitrator's eventual compliance with the agreement by participating in the selection of the third arbitrator and Reed's own payment of Pilgrim's attorney's fees induced Pilgrim to seek dismissal of its action in the expectation that the arbitration process would proceed.

During all of the foregoing events, never once did Reed even remotely suggest that he had been coerced into making the arbitration agreement. Only thereafter—three and one-half months after the petition was filed and thirteen months after the arbitration agreement was signed—did Reed first raise his "affirmative defense." Under these facts, we conclude that Reed is properly estopped from raising his objections to the arbi-

tration agreement. The trial court's ruling barring Reed from challenging the arbitration agreement was correct.

*By the Court.*—Order affirmed.