Michael SEWART and Lynn Sewart,
Plaintiffs-Appellants-Cross-Respondents,

v.

SILVERCRYST LIMITED, INC.,
Defendant-Respondent-Cross-Appellant.†

Court of Appeals

*No. 2009AP2415. Submitted on briefs August 11, 2010.
—Decided September 15, 2010.*

2010 WI App 141

(Also reported in 792 N.W.2d 608.)

Before Brown, C.J., Anderson and Reilly, JJ.

¶ 1. REILLY, J. Michael and Lynn Sewart appeal from an order denying their motion for confirmation of

an arbitration award. Silvercryst Limited, Inc. cross-appeals, arguing that the arbitration award should be vacated as the arbitrators were biased and acted outside the scope of their authority. As we find that the parties contracted for an ongoing arbitration process that provided for the continuing jurisdiction of the arbitration board, we hold that the Sewarts' motion for confirmation of the monetary award was timely and therefore reverse. Additionally, we reject Silvercryst's argument that the arbitration board was biased.

## FACTS

¶ 2. On February 28, 2003, Michael and Lynn Sewart purchased a newly constructed home from the seller Silvercryst Limited, Inc. Shortly after buying the house, the Sewarts began to experience flooding in their basement and alerted Silvercryst. Silvercryst failed to remedy the situation, and the flooding continued into 2005. The Sewarts invoked the arbitration clause found in their home purchase contract.

### Arbitration Agreement

¶ 3. The Sewarts and Silvercryst executed a written arbitration agreement on July 5, 2006. The agreement provided that the controversy would be submitted to the Construction Arbitration Board (CAB) of the Metropolitan Builders Association (MBA) for a hearing and decision utilizing the "procedures" of the CAB. The arbitration agreement expressly provided that "any decision requiring the payment of money may be entered as a judgment by a court of competent jurisdiction if payment is not made pursuant to the ruling of the arbitrators."

¶ 4. The CAB Complaint Processing Procedures set forth the steps of the arbitration process. Initially,

an inspection team (who serve as the arbitrators) meets with the parties and inspects the items listed in the homeowner's complaint. After a hearing is held, the arbitrators' decision is written down and communicated to the parties. If the decision requires the contractor to make repairs, the CAB retains jurisdiction to issue supplemental decisions if either party fails to comply with the award. The CAB states that all decisions or awards are "final," and that any "[d]ecision requiring the payment of money may be entered as a judgment by a court."

## November 15, 2006 Award

¶ 5.  On November 7, 2006, a hearing was held before the CAB. The hearing was memorialized in a three-page award dated November 15, 2006. The award found that there was an excessive amount of water flowing into the Sewarts' basement and that Silvercryst knew of this problem during the construction of the home, yet failed to disclose it to the Sewarts when they purchased the property. Instead of awarding monetary damages to the Sewarts, the CAB gave Silvercryst the opportunity to repair the basement. The CAB also ordered Silvercryst to complete all of the necessary repair work within ninety days (barring delays), and to provide the Sewarts with a one-year warranty against water infiltration from the date the work was completed. Finally, the award noted that the CAB retained the "right to assign monetary values to any items of work not completed in a timely fashion," and that monetary awards represent the CAB's "final decision on a particular issue."

¶ 6.  Weather delays and disagreements over the quality of the repair work ensued, and the dispute between the Sewarts and Silvercryst dragged on for the

next year-and-a-half. The CAB sent a letter on March 31, 2008, to Silvercryst stating that all the work was to be performed by June 30, 2008, or the MBA would issue a monetary award to the Sewarts. Silvercryst's attorney responded by asking the CAB to reconsider its November 15, 2006 decision, but the CAB refused to revise its initial determination.

## July 15, 2008 Ruling

¶ 7.   On July 7, 2008, the CAB performed a site inspection at the Sewart residence. In a written report dated July 15, 2008, the CAB ruled that Silvercryst had thirty days to disconnect the downspouts and install bentonite at the Sewarts' house. Additionally, Silvercryst was ordered to extend its warranty by two years, and if flooding occurred during the warranty period, the Sewarts were to "obtain an estimate of the total costs" of repairs and the CAB would "issue a written decision awarding [the Sewarts] the approved costs for completing the [repair] work."

¶ 8.   While Silvercryst performed repair work, it was not to the satisfaction of the Sewarts and on December 28, 2008, the Sewarts' basement flooded again. The Sewarts informed the CAB of the flooding and provided a cost estimate for installing a drainage system. On February 16, 2009, Silvercryst wrote to the CAB/MBA and stated that the December 28, 2008 flooding was due to "severe and unusual weather," that the CAB/MBA did not have jurisdiction over the matter because the Sewarts failed to reduce the original arbitration award to a judgment, and that Silvercryst was no longer a member of the MBA and therefore the CAB/MBA did not have legal authority over Silvercryst.

¶ 9.   The CAB responded to the parties on March 10, 2009, and indicated it would review all of the

information and issue a final written decision following its review. Silvercryst was invited to submit any information it wanted the CAB to review. Silvercryst did not submit any information.

## May 13, 2009 Decision

¶ 10.   On May 13, 2009, the CAB issued another written decision. The decision rejected Silvercryst's claim that the CAB lost jurisdiction, finding that Silvercryst's departure from the MBA was irrelevant given that both parties signed an arbitration agreement. The arbitrators also found that the flooding in the Sewarts' home on December 28, 2008 was not caused by extraordinary weather. Finally, the CAB awarded $92,030.93 in damages to the Sewarts.

¶ 11.   On May 21, 2009, the Sewarts filed a petition in circuit court to confirm the arbitration award pursuant to WIS. STAT. § 788.09 (2007–08).[1] Section 788.09 provides that:

> At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected under s. 788.10 or 788.11. Notice in writing of the application shall be served upon the adverse party or the adverse party's attorney 5 days before the hearing thereof.

The circuit court denied the petition for confirmation finding that § 788.09 required the Sewarts to confirm the November 15, 2006 arbitration award within one

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

year, and the failure to do so resulted in the CAB losing jurisdiction over the subsequent arbitration proceedings. The Sewarts appealed.

¶ 12. Two issues are presented to us on appeal: (1) did the CAB lose "jurisdiction" when the Sewarts did not confirm the November 15, 2006 arbitration award within a year?; and (2) is Silvercryst estopped from asserting the defense of untimely confirmation? In the event that this court reverses the circuit court, Silvercryst cross-appeals and argues that the award should be vacated as the arbitrators were biased.

## STANDARD OF REVIEW

■■

¶ 13. Our role in reviewing an arbitration award is supervisory in nature. *City of Madison v. Madison Prof'l Police Officers Ass'n*, 144 Wis. 2d 576, 585, 425 N.W.2d 8 (1988). We want to ensure that the parties receive the arbitration process they contracted for. *Id.* at 585–86. Furthermore, arbitration awards are presumed to be valid, and the invalidity of the award must be demonstrated by clear and convincing evidence. *Milwaukee Bd. of Sch. Dirs. v. Milwaukee Teachers' Educ. Ass'n*, 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980).

■■

¶ 14. While arbitrators obtain their authority from a contract, the task of interpreting the contract to determine whether the arbitrators have jurisdiction is for a court. *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1977). When we review an arbitration contract, however, we must exercise great caution. *See id.* at 111. We have no business weighing the merits of the dispute because the parties bargained for the arbitrators' decision, not ours. *Id.*

## ANALYSIS

### The CAB's Jurisdiction Over
### the Arbitration Proceedings

¶ 15.    Whether the CAB lost jurisdiction on November 15, 2007, requires examination of the arbitration agreement. The parties expressly agreed to have the CAB hear and decide the dispute pursuant to the CAB's procedures which included an "opportunity to make repairs" remedy rather than a monetary award. Paragraph fifteen of the CAB's Complaint Processing Procedures states that "[t]he Contractor [Silvercryst] shall be given the opportunity to make repairs if required by the Decision." This "opportunity to make repairs" provision is a contractual agreement that presumably benefits both the Sewarts and Silvercryst; the Sewarts have an independent body to determine whether repairs need to be made and Silvercryst obtains the possibility of cost savings by doing the repairs itself. Both parties also avoid the time and expense incurred in the litigation process.

¶ 16.    The parties also contractually agreed that in the event an "opportunity to make repairs" decision was issued, the CAB would retain the authority to ensure that the repairs were properly performed by Silvercryst and that the Sewarts did not frustrate Silvercryst's opportunity to repair the basement. Paragraph sixteen of the Complaint Processing Procedures expressly gave the CAB the authority to issue a monetary award if Silvercryst failed to make the necessary repairs, or alternatively required no further action by Silvercryst if the Sewarts failed to cooperate:

> The CAB retains jurisdiction and may take any action it deems necessary in order to enforce its Decision. If either party fails to complete any items required as part of the Decision within the time frame specified

781

in the Decision, the CAB retains the authority and jurisdiction to make a Supplemental Decision.

¶ 17. On November 15, 2006, the CAB issued an "opportunity to make repairs" decision. The CAB reserved the right, as provided by the arbitration agreement, to assign monetary values in the future if Silvercryst did not make the required repairs. Additionally, the CAB had the power to require no further action by Silvercryst if the Sewarts failed to cooperate. On July 15, 2008, the CAB found that Silvercryst failed to comply with the November 15, 2006 decision, and thus issued a supplemental decision ordering Silvercryst to fix the flooding problem within thirty days. While further repair attempts were made, the CAB ultimately determined that Silvercryst failed in its "opportunity to make repairs," and issued a monetary award to the Sewarts on May 13, 2009.

¶ 18. The circuit court found that the CAB lost jurisdiction on November 15, 2007. Examining the arbitration agreement entered into by the parties, this court concludes that the Sewarts and Silvercryst bargained for the continuing arbitration process that the CAB engaged in. The parties agreed that an "opportunity to make repairs" option would be one of the benefits of their agreement. Both parties agreed that the failure to make the necessary repairs could result in a monetary award that was confirmable in court.

■■

¶ 19. Wisconsin courts encourage arbitration. *See McKenzie v. Warmka*, 81 Wis. 2d 591, 598, 260 N.W.2d 752 (1978). Arbitration must, however, be final prior to it coming to the court for confirmation. *Id.* at 599. Seeking to confirm an arbitration award that is not final would lead to additional litigation, a result con-

trary to the purpose of arbitration. *See id.* Had the November 15, 2006 award been brought to the circuit court within a year of November 15, 2006, the court would have been faced with a matter that was not yet ready for confirmation; neither the repairs nor the dispute was final as of November 15, 2007. "When a matter is submitted to arbitrators and a final and definite award covering all the subject matter submitted is not made, the arbitration has failed to serve its purpose and should not be accepted." *Garstka v. Russo*, 37 Wis. 2d 146, 150, 154 N.W.2d 286 (1967).

¶ 20. Silvercryst argues that the arbitration agreement conflicts with Wis. Stat. § 788.09 because the agreement allows for the continuing jurisdiction of the arbitration board. While it is true that a private arbitration agreement cannot violate Wisconsin arbitration statutes, *see City of Madison v. Frank Lloyd Wright Found.*, 20 Wis. 2d 361, 383–84, 122 N.W.2d 409 (1963),[2] Silvercryst offers no evidence of how the MBA arbitration agreement conflicts with Chapter 788 of the Wisconsin Statutes. Chapter 788 does not prohibit an arbitration agreement providing for interim decisions flowing from the continuing jurisdiction of arbitrators. The parties expressly agreed that the CAB had the power to exercise continuing jurisdiction during the "opportunity to make repairs" period and to issue supplemental decisions. The November 15, 2006 decision was not a final decision but rather an interim order, whereby the parties expressly agreed that the CAB arbitration process would continue.[3]

---

[2] Note that Wis. Stat. ch. 788 was previously numbered Wis. Stat. ch 298.

[3] While the November 15, 2006 decision does stipulate at the end that "THE ABOVE AWARD IS THE DECISION OF

¶ 21. Both the November 15, 2006 and the May 13, 2009 decisions state, " [m]onetary sums awarded by the [CAB] represent the [CAB's] final decision on a particular issue." The arbitration agreement and the Complaint Processing Procedures both provide that monetary awards may be entered as a judgment by a court of competent jurisdiction. Less than a week after the CAB issued its May 13, 2009 monetary award, the Sewarts applied for confirmation of the award in circuit court. The Sewarts have thus complied with the arbitration agreement and with Wis. Stat. § 788.09.

## Estoppel

¶ 22. On June 30, 2008, nineteen months after the November 15, 2006 decision and prior to the CAB issuing a supplemental decision, Silvercryst asked the CAB to reconsider its original November 15, 2006 decision. This court has held that participation in the arbitration process can estopp a party from later challenging the arbitration agreement. *See Pilgrim Inv. Corp. v. Reed*, 156 Wis. 2d 677, 685–86, 457 N.W.2d 544 (Ct. App. 1990). From November 2007 through early 2009, Silvercryst continued to participate in the arbi-

THE ARBITRATORS AND IS A FINAL AND COMPLETE AWARD ON THE DISPUTE BETWEEN THE PARTIES," this appears to just be pro forma language. Indeed, the May 13, 2009 supplemental decision includes this same phrase. Given that the arbitration agreement provides for the CAB to exercise continuing jurisdiction even after it has issued a decision, this above-referenced clause is just a statement that the CAB's decision on a submitted dispute is final, not that the CAB was abdicating its jurisdiction.

Additionally, both decisions stated that "[m]onetary sums awarded by the [CAB] represent the [CAB's] final decision on a particular issue."

tration proceedings. Silvercryst was thus engaging in arbitration a year-and-a-half after it believed the CAB lost jurisdiction. The court need not fully address estoppel as Silvercryst agreed in the arbitration agreement that the CAB would continue to exercise jurisdiction during the "opportunity to make repairs" period.

## Arbitrator Impartiality

■■

¶ 23.    Finally, Silvercryst seeks to vacate the CAB's decision on the grounds that the arbitration board was not impartial. We start with the presumption that all arbitrators are neutral. *See Borst v. Allstate Ins. Co.*, 2006 WI 70, 3, 291 Wis. 2d 361, 717 N.W.2d 42. While this presumption can be rebutted, Silvercryst has not demonstrated that the arbitrators were biased. Initially, we note that the circuit court judge did not find any evidence of bias amongst the arbitrators. As a rule, this court will not set aside factual findings by the circuit court unless we find them "clearly erroneous." WIS. STAT. § 805.17(2). Aside from a few e-mails from the arbitrators who appeared frustrated with the length of time Silvercryst was taking to make the repairs, Silvercryst offers no evidence that the arbitrators were biased.[4] We thus refuse to vacate the MBA's arbitration award of $92,030.93 to the Sewarts.

---

[4] Silvercryst cites two e-mails as evidence of the CAB's bias. One was from a CAB member to the MBA's Director of Consumer Affairs. On June 12, 2008, the board member stated that the arbitrators would not give Silvercryst any more extensions due to weather, "I don't care, [Silvercryst] can watch and pay." Then, on July 23, 2008, the Director wrote to an unidentified person that the arbitration proceedings are "going to get ugly," and that the CAB "is holding [Silvercryst] responsible."

## CONCLUSION

¶ 24.  The role of a court when examining arbitration proceedings is to ensure that the parties receive the arbitration process they contracted for. *See Professional Police Officers Ass'n,* 144 Wis. 2d at 586. The Sewarts and Silvercryst agreed to the CAB arbitration process. Contractually, the CAB's arbitration procedures provided for an interim order (the "opportunity to make repairs" period). As Chapter 788 of the Wisconsin Statutes does not prevent parties from contracting for an arbitration agreement that provides for continuing jurisdiction following interim orders, the Sewarts were entitled to confirm the final monetary award of $92,030.93. We thus reverse the circuit court's order that the Sewarts' motion for confirmation of the arbitration award was untimely filed, and remand to the circuit court to confirm the arbitration award pursuant to Wis. Stat. § 788.09 and the parties' agreement.

*By the court.*—Order reversed and cause remanded with directions.

---

The first statement seems to be a display of frustration that Silvercryst still had not fixed the Sewarts' flooding problems nineteen months after the CAB issued its original November 15, 2006 decision. The second e-mail just contains factually true statements. The proceedings were already becoming contentious by the summer of 2008, so calling them "ugly" is not evidence of impartiality. Additionally, by July 23, 2008, the CAB had already issued a decision that found Silvercryst was responsible for the flooding problems, rejected Silvercryst's motion to reconsider that decision, and issued a supplemental decision in which it ordered Silvercryst to fix the Sewarts' basement by August 15, 2008. At this point, the CAB was already holding Silvercryst responsible—saying so does not impute bias.